UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XAVIER HENRY,

               Plaintiff,               Case No. 1:10-cv-826

v.                                          Honorable Robert Holmes Bell

UNKNOWN BURNS,

               Defendant.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Xavier Henry presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Saginaw Correctional Facility, though the conduct about which he complains occurred while he was housed at the Michigan Reformatory (RMI). He sues RMI Lieutenant (unknown) Burns.

According to the complaint, Plaintiff was diagnosed with de Quervein's tendonitis, also known as de Quervain's disease, a condition that involves swollen or irritated tendons in the thumb-side of the wrist, which is typically caused by overuse. *See De Quervain's Tendinitis Definition*, ORTHOINFO GLOSSARY (American Academy of Orthopaedic Surgeons), http://orthoinfo.aaos.org/topic.cfm?topic=a00007 (last visited Mar. 27, 2012); *see also* DORLAND'S LAW DICTIONARY 532 (32nd ed. 2012) (defining de Quervain's disease as an "[o]veruse injury with painful tenosynovitis due to relative narrowness of the common tendon sheath of the abductor pollicis longus and extensor pollicis brevis.") Medical personnel in health services issued Plaintiff a removable cast/splint to immobilize his wrist. The splint was prescribed to alleviate Plaintiff's wrist pain and to avoid aggravating the swollen tendons. Plaintiff was instructed to wear the splint for 90 days, removing it only for showers and shake downs.

For an unspecified period of time, Plaintiff was permitted to wear the splint during contact visits in the visitation room. On October 28, 2009, Plaintiff had a visitor. He was told by Corrections Officer Garranger that he had to remove the splint while he was in the visitation room. Deputy Warden Kipp intervened, permitting Plaintiff to wear the splint because it was removable and could be taken off and searched after the visit. On October 30, 2009, Plaintiff received another visit from family members who had traveled some distance. Defendant Lt. Burns instructed

Corrections Officer Gable, who was staffing the visiting room, that Plaintiff had to remove the splint. Plaintiff explained that Deputy Warden Kipp had cleared him to wear the splint in the visiting room. Burns entered the visiting room and issued Plaintiff a direct order to either remove the splint or be limited to a non-contact visit. Plaintiff again tried to explain why Kipp had allowed him to wear the splint, but Burns became irate and began to belittle Plaintiff in front of his family. Burns told Plaintiff that, regardless of Kipp's prior statement, Burns, as shift commander, was directing Plaintiff to remove the splint.

Plaintiff complied with Burns' order by removing the splint. During his visit with family, Plaintiff used his left hand as a brace for his right wrist. After visiting for nearly three-hours, Plaintiff allegedly terminated the visit because his wrist became too painful.

Two days later, Plaintiff was seen in the health services department on a follow-up visit. At that time, he was ordered to wear the splint for "an additional weeks [sic] . . . ." (Compl. at 3, docket #1, Page ID#3.) Plaintiff asserts that the additional time spent in the brace resulted from having the wrist out of the brace for three hours. He also alleges that holding his right wrist with his left hand for three hours caused him to develop de Quervain's tendonitis in the left wrist.

Plaintiff maintains that Burns' order violated MICH. DEP'T OF CORR., Policy Directive (PD) 05.03.140(EE)(2). He also asserts that he was subjected to pain and injury by Burns' conduct. He seeks compensatory and punitive damages.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff complains that Burns violated MDOC policy governing visitation. Specifically, he alleges that PD 05.03.140(EE)(2), which governs when non-contact visits are required, was improperly applied by Burns. To the extent that Plaintiff alleges a violation of MDOC policy, he fails to state a federal claim. A defendant's failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, Plaintiff's allegation that Burns' order violated MDOC policy fails to state a claim.

Plaintiff does not expressly claim that Burns' refusal to allow Plaintiff to wear his splint in the visitation room violated any constitutional provision. Nevertheless, the Court construes Plaintiff's allegations as raising a claim under the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim of deliberate indifference to serious medical needs has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In the instant case, Plaintiff does not complain about the medical care provided by health services for the treatment of his de Quervain's tendonitis. Instead, he alleges that Burns deprived him of his wrist splint for three hours during visitation, which amounted to deliberate indifference to his serious medical need.

Plaintiff's allegations fail to demonstrate either prong of the deliberate indifference test. First, it is far from clear that Plaintiff's medical need was either sufficiently serious or obvious to meet the objective component of the test. Plaintiff did not have a broken bone or other condition in which the "seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899. Instead, by his own admission, Plaintiff was ordered to wear the splint in order to reduce the swelling and to avoid further aggravation of his swollen tendons. A sore tendon, while uncomfortable, is a relatively minor ailment. In addition, it is completely non-obvious to a lay person that the removal of a palliative splint would cause any injury, much less serious injury.[1]

Plaintiff also fails to meet the subjective element of the test. Plaintiff fails entirely to allege that Burns was aware that the removal of the brace for the brief period of the contact visitation would cause any serious harm – or even any serious pain. Although the splint was ordered to assist Plaintiff in limiting his wrist movements, it is not at all apparent why Plaintiff could not simply avoid moving his wrist during the requisite period. Indeed, according to the complaint, Burns made that suggestion to Plaintiff. Further, Plaintiff's conclusory claim that Burns' order (and Plaintiff's subsequent holding of his right wrist with his left hand for three hours) caused Plaintiff to develop de Quervain's disease in his left wrist is both conclusory and patently farcical. Finally, nothing about Burns' order required Plaintiff to undergo any pain or risk any potential injury. To the contrary, Burns gave Plaintiff a choice of removing his splint or having a non-contact visit.

---

[1] In fact, while Plaintiff does not expressly state how long he had been wearing the brace before the incident, it appears from other allegations that Plaintiff had worn his brace almost the entire recommended 90 days. Plaintiff states that he was seen in health services only two days after the incident, at which time his 90-day period was extended for another week. It is far from obvious that the temporary removal of a splint near the end of the recommended period of wear would cause any harm.

- 7 -

While Plaintiff undoubtedly wished to participate in a contact visit, Burns did not require Plaintiff to choose a course of action that would cause Plaintiff serious pain or injury.

Because Plaintiff's allegations are insufficient to support either the objective or subjective component of the deliberate-indifference test, Plaintiff fails to state an Eighth Amendment claim based on Burns' order to remove the splint.

Finally, Plaintiff's allegation that Burns belittled Plaintiff in front of his family does not state a claim. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth

Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Burns arising from his alleged verbal abuse.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: April 4, 2012                                   /s/ Robert Holmes Bell
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE